JAMES J. REDSTRAKE v. SAMUEL TOWNSEND.

1. In every case in which an estate tail, by the rules of the common law, is created, the eleventh section of the act of descents applies, and this result would obtain if an estate tail with a fee simple expectant thereon should be created.
2. The object of the eleventh section of the act of descents was to abolish fee tails in every form in which they might arise.

In ejectment. On case certified from the Salem Circuit Court.

The following is agreed upon by the attorneys of the plaintiff and defendant, as the facts upon which the judgment of the court shall be rendered in the above-named cause, that is to say, on the facts hereinafter stated, if the plaintiff, in the opinion of the court, is entitled to the premises described in the declaration, or any part thereof, then judgment shall be given for the plaintiff for such part of the premises as he may have title to; but if the court, on the said facts, shall be of opinion that the plaintiff is not entitled

to said premises, nor to any part thereof, then judgment is to be given for defendant—it being expressly agreed and understood that either party hereto may turn this special case, and the finding of the court thereon, into a special verdict, for the purpose of bringing a writ of error.

1. It is agreed that, by division of lands of Thomas Bradway, deceased, recorded in Salem county surrogate's office, in Book D of Divisions, page 91, &c., December Term, 1821, that the lands described in the declaration were set off, as part of other lands (seven acres, two roods), to Sarah Ann Bradway, in severalty.

2. That said Sarah Ann Bradway intermarried with John S. Wood, about the year 1825.

3. That on February 2d, 1827, said John S. Wood and Sarah Ann, his wife, conveyed said premises to Isabella Bradway, by deed dated February 2d, 1827, which was filed and recorded in Salem county clerk's office on the 28th day of November, 1874, in Book No. 46 of Deeds, folio 267, duly acknowledged on the day of its date.

4. That on the same February 2d, 1827, the said Isabella Bradway made a deed of the same premises to said John S. Wood and Sarah Ann Wood, dated February 2d, 1827, which was recorded in Salem county clerk's office on the 28th day of November, 1874, in Book No. 46 of Deeds, folio 268, and conveyed said premises to John S. Wood and Sarah Ann Wood, their heirs and assigns, with *habendum* and *tenendum* clauses, in the words following: " To have and to hold the said premises, with all and singular the appurtenances, unto the said John S. Wood and Sarah Ann Wood, his wife, and to their heirs, male and female, the lineal issue of the marriage between the said John S. Wood and Sarah Ann Wood, and on failure of such issue, at the death of the said John S. Wood and Sarah Ann Wood, then to the right heirs of the said John and the said Sarah Ann, respectively, to be equally divided between them, as tenants in common, or to such testamentary disposition of the said granted premises (after failure of issue, as aforementioned,) as shall or may be made

by the said John and Sarah Ann respectively, each of them, to wit, the said John and the said Sarah Ann, having the right to devise and dispose of the one equal undivided half part or moiety of the within-granted premises, to take effect and have operation from and after the death of both the said John and the said Sarah Ann," covenants of power to convey for peaceable possession against encumbrances and of general warranty, duly acknowledged on the day of its date.

5. That Sarah Ann Wood died on the 26th day of June, 1865, leaving her surviving her husband, said John S. Wood, and her children by him, and only heirs-at-law, Thomas B. Wood, Adeline M. Sinnickson, Warren D. Wood, and Lucy J. Clark, first making her last will, proven before recorded, before Cumberland county surrogate, and hereby referred to.

6. That the said John S. Wood, during his lifetime, from the year 1825, was in receipt of the rents, issues, and profits of all the above-described lands set forth in plaintiff's declaration.

7. That on the 11th day of June, 1870, Thomas Sinnickson, Jr., and said Adeline M., his wife, made and delivered to James J. Redstrake a deed of mortgage to secure a loan of $3000, then paid to said Thomas Sinnickson, Jr., payable one year after date, upon the one equal undivided fourth part of above tract set off to Sarah A. Bradway; that neither said Adeline nor said Redstrake had any knowledge of the above-named two conveyances, one from John S. Wood and wife to Isabella Bradway, and the other from Isabella Bradway to said John S. Wood and wife, at the time of making and delivering said mortgage.

8. That said mortgage was recorded June 11th, 1870, in Salem county clerk's office, in Book X of Mortgages, folio 21, &c., and contained a recital of title in the words following, after describing said lands by metes and bounds: "Being the same tract that the said Adeline M. Sinnickson inherited, together with the brothers and sisters, as tenants in common, from her mother, Sarah Ann Wood, deceased, and

in which land the father, John S. Wood, now has a life-estate, as tenant by curtesy, and the said Adeline has an estate in remainder in the undivided one-fourth part thereof;" that said mortgage was duly acknowledged by said Thomas Sinnickson and Adeline M., his wife, as required by law, and recorded on June 11th, 1870, in Salem county clerk's office, in Book X of Mortgages, folio 21, &c.

9. That John S. Wood died intestate, on the 30th day of August, 1870, leaving him surviving Thomas B. Wood, Adeline M. Sinnickson, Warren D. Wood, and Lucy J. Clark, his only children, and only lineal descendants of the said John S. Wood and Sarah Ann, his wife.

10. That said James J. Redstrake filed his bill of complaint in the Court of Chancery of New Jersey, praying foreclosure and sale of said premises on above mortgage, in which bill James J. Redstrake was complainant, and Thomas Sinnickson, Jr., and said Adeline M., his wife, and others, were defendants; that decree was made thereon on March 23d, 1874, for foreclosure and sale of the undivided one-fourth of Adeline M. Sinnickson's above-described tract of land.

11. That John Hires, sheriff of Salem county, under execution in above foreclosure, sold and conveyed the above undivided one-fourth part of said premises to said James J. Redstrake, as directed by said decree and execution in said cause, by deed dated June 17th, 1874, recorded on the 20th day of June, 1874, in Salem county clerk's office, in Book No. 45 of Deeds, folio 543.

That the defendant, Samuel Townsend, is in the possession of the premises described in the declaration, as tenant of the undivided one-fourth part of said premises, under said Adeline M. Sinnickson, as tenant from year to year, beginning his tenancy after June 11th, 1870, and the undivided three-fourths part thereof under said Thomas B. Wood, Warren D. Wood, and Lucy J. Clark.

That either party shall have leave to produce, as part of this state of the case, any documentary evidence herein

referred to, or duly certified copies thereof, and to require the production of the same from the other party, who shall produce the same.

Argued at February Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, DIXON and REED.

For the plaintiff, *M. P. Grey.*

For the defendant, *P. L. Voorhees* and *A. Browning.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE    The primary question in this case is, as to the true construction and legal force of the deed of conveyance from Isabella Bradway to John T. Wood and his wife, Sarah A. Wood. The plaintiff claims title to the one undivided fourth part of the premises in dispute, by force of a sheriff's deed, made in a foreclosure suit, founded on a mortgage given by Thomas Sinnickson, Jr., and his wife, Adeline M., who was a daughter of the above-named John T. Wood and Sarah A. Wood. This encumbrance was made after the death of Sarah A. Wood, but during the lifetime of her husband, and the controversy has arisen with respect to the interest of Mrs. Sinnickson in the property embraced in the conveyance to her father and mother.

The contention on the side of the plaintiff is, that the conveyance referred to would, at common law, have vested in the grantees a fee tail; and that, consequently, by force of the eleventh section of the act directing the descent of real estates, (*Rev*, *p.* 299,) Mr. and Mrs. Wood became tenants for life in the premises, and Mrs. Sinnickson, their daughter, became one of the tenants in common in fee of a vested remainder. In opposition to this, the defendant insists that the deed has not the efficacy attributed to it; or that, on the concession that it has, then the position is taken, that it not only would create such fee tail, but would mount upon such

fee tail an expectant fee simple, and that, therefore, the statute just designated has no applicability to the case.

The instrument thus put in discussion is certainly indicative of singular want of skill and legal knowledge in the draughtsman; but, notwithstanding its solecisms, I think it plain that its legal operation is to create a fee tail special at the common law. The state of the case declares that this deed conveys the premises "to John T. Wood and Sarah Ann Wood, their heirs and assigns," and that the *habendum* clause is in the words following, to wit, "to have and to hold the said premises, with all and singular the appurtenances, unto the said John T. Wood and Sarah Ann Wood, his wife, and to their heirs, male and female, the lineal issue of the marriage between the said John T. Wood and Sarah Ann Wood." Thus, it will be observed, that while in the premises of this deed a fee is conveyed, the *habendum* clause measures out but a fee tail. It has been in doubt whether, under such circumstances, both clauses are to have, to some extent, a separate effect, or whether the *habendum* clause is to be taken as simply explaining or qualifying the force of the premises; but I have not found that it has ever been thought that, whichever view was adopted, a fee tail was not evolved. When the *habendum* clause has been regarded as nothing more than a qualification of the estate described in the premises, a fee tail has been deemed the entire product of the conveyance; when a larger effect has been ascribed to the premises, the result has been a fee tail with a fee simple expectant thereon. This doctrine is very clearly stated by Lord Coke, in his annotations on Littleton. 1 *Inst.* 21, *a.* Referring to the instance of a want of exact correspondence between the premises and the *habendum*, he puts forth this illustration: "As if a man in the premises give lands to another, and the heirs of his body, *habendum* to him and his heirs forever; it hath been holden, that in this case he hath an estate tail and a fee simple expectant thereon. And so, it is said, *vice versâ*, if lands be given to a man and to his heirs in the premises, *habendum* to him and the heirs of his body, that he hath an estate tail

and a fee simple expectant." This latter case thus stated, of a fee given in the premises and a fee tail denoted in the *habendum*, is the one now under consideration; and although, in the foregoing quotation, it is said that such dispositions result in a fee tail and a fee simple expectant, such a doctrine cannot be received as unquestionable, for this same author, in the eighth part of his reports, page 154, refers to other cases holding the contrary view, and characterizes the expression of the other opinion as merely *obiter*. As it is the office of the *habendum* to qualify and explain the general words of the premises, this doctrine last stated seems to me to be the better grounded in reason, as I also think it is better sustained by authority. 2 *Washb. on Real Prop.* 642; 2 *Id.* 73; 2 *Preston's Est.* 358, 360. But, with respect to the present inquiry, it does not appear to be a question of any importance whether these clauses of the deed in controversy raise purely a fee tail, or such an estate with a fee simple expectant on it, for it is enough, for present purposes, to know that, adopting either of the views taken in the authorities, it is admitted that the operation of the instrument is to create a fee tail.

The reason why I think this the all-important and controlling fact is, that, in my opinion, the eleventh section of the statute of this state, touching the descent of lands, applies to every possible case in which an instrument, by the operation of common law rules, calls into existence an estate tail. The language of this law is perfectly plain and explicit. It says: "That from and after the passing of this act, where any conveyance or devise shall be made, whereby the grantee or devisee shall become seized in law or equity of such estate in any lands or tenements, as under the statute of the thirteenth of Edward I., (called the statute of entails,) would have been an estate in fee tail," then the scheme of the statute is to come into play. The rule thus established is universal; it has no exceptions, and as the statute hints at none, it is impossible for the court to interpolate any. There is nothing in the language of the act that would lend the slightest countenance

Redstrake v. Townsend.

to such an intrusion on the part of the court, nor is there anything in the reason or policy in which this law is founded which would justify such a course. The legislative purpose was to eradicate the entire system of entails, the evil thus sought to be removed being the impolicy of allowing land to be hampered and fettered by the technical rules appertaining to that branch of jurisprudence. To accomplish this aim with entire effect, it was requisite to provide against every form which the object to be suppressed might assume, and hence the generality of the language of the regulation. If this court should now hold this estate tail, created by this deed, to be valid, because there is superadded to such estate a fee simple expectant thereon, it is obvious that the design of this law would be to that extent counteracted, and the endeavor to abolish entails would have been attended with success only in part. If estates tail could be established by superadding to the gift the donor's right to a reverter, they would soon again be in vogue, and the interdicting statute would be stinted to half its proper effect.

It is obvious, from this view, that the contingent interests which, by this conveyance, are given to its donees, can have no effect on the question now involved. The event provided for appears to have been the running out of the estate tail during the life of the longest liver of the two donees in tail. Such a regulation recognizes the estate tail, and consequently has no present significance.

This conclusion also dispenses with the necessity of examining the other points taken in the argument.

The result is, that Mr. Sinnickson, when he made this mortgage, was, according to the force of the decision of the Court of Errors in the case of *Demarest* v. *Den*, 2 *Zab.* 599, seized of a vested remainder in fee, and consequently had the legal right to encumber such estate.

The Circuit Court should be so instructed.